IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

ANCHOR BREWING COMPANY,

    Plaintiff,

  v.

JULIO PEIX, et al.,

    Defendants

No. C-06-7914 MMC

**ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISCHARGE STAKEHOLDER; GRANTING DEFENDANT JULIO PEIX'S MOTION TO DISMISS, CONSTRUED AS MOTION FOR SUMMARY JUDGMENT; VACATING HEARING**

      Before the Court is Anchor Brewing Company's ("Anchor") "Motion in US District Court for Order Discharging Stakeholder, Restraining Adverse Claimants from Instituting or Further Prosecuting Any Action in Any Court in this State Involving the Same Fund or Property, and for Reasonable Attorney Fees and Costs of Suit from the Funds Deposited," filed January 10, 2007, as amended January 24, 2007. Defendant Julio Peix ("Peix") has filed opposition, to which Anchor has replied.

      Also before the Court is Peix's motion, filed January 26, 2007, to dismiss Anchor's Complaint in Interpleader pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. Plaintiff has filed opposition, and defendant United States has filed a response; Peix has filed a reply.

      Having considered the papers filed in support of and in opposition to the motions, the Court deems the matters suitable for decision on the papers, VACATES the hearing

scheduled for March 2, 2007, and rules as follows.

## BACKGROUND

In Anchor's complaint, initially filed in state court,[1] Anchor alleges Peix filed a civil action against Anchor, in which Peix sought "accrued salary, vacation and severance pay," as well as "damages from loss of wages [and] emotional distress" and "punitive damages." (See Compl. ¶ 3.) Anchor also alleges that Peix and Anchor settled Peix's claims, but that Peix and Anchor disagreed as to whether Anchor was required to withhold employment taxes from the settlement monies, (see Compl. ¶¶ 4-10). At the time it filed its complaint, Anchor deposited with the Clerk of the San Francisco Superior Court the sum of $115,000.00, (see Widmann Decl., filed December 27, 2006, Ex. E), which amount is "the amount payable under the settlement," (see Compl. ¶ 4).[2]

## DISCUSSION

**A. Motion for Discharge**

In its motion for discharge, Anchor argues it is entitled to an order discharging it from liability to defendants on any claim pertaining to the interpleaded funds, an order restraining defendants from prosecuting any other action against Anchor pertaining to the interpleaded funds, and an award of attorney's fees and costs from the interpleaded funds. Under both federal and state law, a court has discretion to "discharge the plaintiff from further liability," to restrain claimants from "instituting or prosecuting any proceeding . . . affecting the property, instrument or obligation involved in the interpleader action," see 28 U.S.C. § 2361; see also Cal. Code Civ. Proc. § 386(f), and to award the plaintiff fees and

---

[1] Peix removed the instant matter to federal district court.

[2] "Deposit of the disputed funds in the [federal district] court's registry . . . is not a jurisdictional requirement to [R]ule 22(1) interpleader." Gelfgren v. Republic Nat'l Life Ins. Co., 680 F. 2d 79, 81-82 (9th Cir. 1982). The instant action, upon removal, proceeds under Rule 22, and the Court has jurisdiction over the action in light of Anchor's having alleged its entitlement to an order finding it is not liable to the United States for any failure to withhold employment taxes from the settlement monies. See Morongo Band of Mission Indians v. California State Board of Equalization, 858 F. 2d 1376, 1384 (9th Cir. 1988) (holding district court has jurisdiction over interpleader action under Rule 22 "if the cause(s) of action anticipated by the plaintiff's suit would arise under federal law").

costs from the interpleaded funds, see Schirmer Stevedoring Co. v. Seaboard Stevedoring Corp., 306 F. 2d 188, 194-95 (1962) (holding district court has discretion to award plaintiff in interpleader action fees and costs from interpleaded funds); see also Cal. Code Civ. Proc. § 386.6(a).

In that Anchor does not claim an interest in the subject funds, Anchor is entitled to an order discharging it from any further liability to defendants on any claim pertaining to the interpleaded funds and restraining defendants from prosecuting any other action that pertains to the interpleaded funds.[3]  See, e.g., Aon Corp. v. Hohlweck, 223 F. Supp. 2d 510, 514 (S.D. N.Y. 2002) (holding "stakeholder having no claim to the subject matter of the action" may be discharged from action, leaving "competing claimants" to establish their entitlement to interpleaded funds).

With respect to Anchor's claim for fees and costs from the interpleaded funds, the Court declines to exercise its discretion to award such fees and costs.  Assuming, arguendo, Anchor had a good faith belief that it may have been required to withhold employment taxes at the time it instituted the instant action, Anchor nevertheless had no basis to interplead the entire settlement amount, but only the relatively small portion thereof it believed was reasonably subject to withholding.[4]  Stated otherwise, there is no dispute that Peix is entitled, and has always been entitled, to receive the bulk of the settlement funds.  Consequently, Anchor has, for a period of close to four months, unnecessarily deprived Peix of the benefits of the majority of the settlement monies.  Further, the evidence offered by both Anchor and Peix establishes Anchor, in advising Peix of its position that employment taxes should be withheld, waited until after the parties had signed a written settlement agreement that is silent both as to any allocation of the settlement funds among Peix's wage and other claims, and as to the subject of withholding.  (See

---

[3]This ruling does not apply to Peix's motion for the imposition of sanctions against Anchor, filed herein, which motion is noticed for hearing March 23, 2007.

[4]Anchor has not advised the Court, either in its complaint or in any other filing, as to the amount it believes it may have been required to withhold.

3

1 Peix's Req. for Judicial Notice, filed January 26, 2007, Ex. B (Ex. A attached thereto); Peix
2 Decl., filed February 9, 2007, ¶ 3; Harrington Decl., filed January 10, 2007, Ex. B).  By
3 waiting to raise the question of withholding until a time after the settlement agreement had
4 been executed, Anchor effectively deprived Peix of the opportunity to negotiate as to the
5 inclusion therein of a provision indicating what portion of the settlement monies represented
6 payment for wage claims; such negotiation, in all likelihood, would have resolved the issue
7 without the need for court intervention.  Under the circumstances, Anchor has not shown its
8 entitlement to an award of fees and costs from the interpleaded funds.

**B.  Motion to Dismiss**

In his motion to dismiss, Peix argues the complaint should be dismissed on the ground that the settlement monies are not subject to withholding, and, in reliance on such argument, asserts he is entitled to an "order that the settlement monies on deposit with the San Francisco Superior Court be forthwith paid over to him."  (See Peix's Mot. to Dismiss, filed January 26, 2007, at 10:16-17.)  In essence, Peix is requesting that the Court determine the merits of the claim alleged in the complaint, an issue more properly addressed by way of a motion for summary judgment.[5]  See, e.g., Aon Corp., 223 F. Supp. 2d at 517 (determining, in context of motion for summary judgment brought by claimants, whether claimants were entitled to interpleaded funds).  Indeed, Peix, Anchor, and the United States have all offered evidence in support of their respective positions.  Accordingly, the Court will treat the motion to dismiss as a motion for summary judgment. See Fed. R. Civ. P. 12(b) (providing where, in support of motion to dismiss, "matters outside the pleadings are presented to and not excluded by the court, the motion shall be

//
//

---

[5] Peix also argues the complaint should be dismissed on the ground that Anchor has "unclean hands."  (See id. at 8:8-12.)  Peix fails, however, to demonstrate that he is entitled to dismissal on such grounds.

4

treated as one for summary judgment").[6]

On the merits, the only alleged claimants identified in the complaint are the United States, the State of California, and Peix. Peix's position is set forth above. The respective positions of the remaining defendants are set forth below.

First, on or about December 19, 2006, the State of California Franchise Tax Board filed a Disclaimer, in which it "disclaim[ed] any right, title or interest in or to the property described in the complaint," and requested that "judgment be entered accordingly." (See Peix's Req. for Judicial Notice, filed January 26, 2007, Ex. E at 1:19-21, 2:4.) Thereafter, on February 15, 2007, the State of California Employment Development Department filed a Disclaimer, in which it similarly "disclaim[ed] all right, title and interest of whatsoever character and extent in the property described in the Complaint," and requested that "judgment be entered accordingly." (See Disclaimer, filed February 15, 2007, at 1:18-21, 1:24.)

Lastly, the United States, on February 5, 2007, filed a Response, in which it "disclaim[ed] any interest" in the interpleaded funds "except to the extent of $7,069.22, which [Peix] owes for the 2005 tax year." (See United States's Response, filed February 5, 2007, at 1:17-18.) The United States does not, however, identify any ground on which Anchor would have been required to withhold such sum from the settlement monies to satisfy Peix's prior obligation. Nor, given the language of the disclaimer, is the United States arguing that Anchor was required to withhold employment taxes from the settlement monies. Consequently, the United States has made no showing, or articulated a theory to support a finding, that Anchor was required to withhold any sum from the interpleaded

//
//

---

[6]Ordinarily, the Court would be required to give the parties notice of its intent to treat a motion to dismiss as a motion for summary judgment. Here, as discussed, each defendant has submitted evidence, and/or a disclaimer, of its entitlement to the interpleaded funds. Under such circumstances, the Court perceives no need to continue the matter.

5

funds.[7]

Based on the State of California's express disclaimer of any rights to the settlement funds, the absence of an assertion by the United States that Anchor was required to withhold any sum from the settlement funds, and the Court's having exercised its discretion to deny Anchor an award of attorney's fees and costs from those funds, the Court finds that Peix is, as a matter of law, entitled to the interpleaded funds.

## CONCLUSION

For the reasons stated above:

1. Anchor's motion for discharge is hereby GRANTED in part and DENIED in part as follows. To the extent Anchor seeks an order of discharge, the motion is hereby GRANTED; Anchor is hereby DISCHARGED from further liability to defendants on any claim pertaining to the interpleaded funds, and defendants are hereby RESTRAINED from prosecuting any other action against Anchor pertaining to the interpleaded funds. In all other respects, Anchor's motion is DENIED.

2. Peix's motion to dismiss, construed as a motion for summary judgment, is hereby GRANTED.

2. Peix is hereby ordered to submit, no later than March 19, 2007, a proposed form of judgment accompanied by a supplemental memorandum of points and authorities supporting such specific form of judgment.[8]

**IT IS SO ORDERED.**

Dated: February 28, 2007

MAXINE M. CHESNEY
United States District Judge

---

[7] Peix concedes he owes the United States "approximately $7,000 in penalties and interest." (See Peix Decl., filed February 9, 2007, ¶ 2.) The issue before the Court, however, is whether Anchor is required to withhold said amount from the settlement funds.

[8] Ordinarily, the Court would direct the Clerk of the District Court to deliver the funds to Peix at his request. Here, however, Peix removed the case to federal court, and the interpleaded funds remain in the possession of the Clerk of the Superior Court. Peix cites no statutory or case law authorizing this Court to issue a similar directive to the Clerk of the Superior Court.